Good morning, Justices, Councilor Michel Ramos on behalf of Avalanche in the case. We respectfully request to reserve two minutes for rebuttal in this case. All right. Thank you. Okay. This is an appeal from a trial held on October 2012. This was a civil action filed as a result of the negligent acts of defendants Dorado Health and Dr. Caprafeu's pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico. The present case concerns the traumatic delivery of minor plaintiff due to the negligence of defendants. On October 31, 2012, the jury returned with a verdict where they found by a preponderance of the evidence that Dr. Caprafeu was negligent in connection with minor plaintiff and that any negligence on part of Dr. Caprafeu was the proximate cause of minor plaintiff's impairment. On the other hand, the jury found by the preponderance of the evidence that Dorado Health was negligent in connection to minor plaintiff, but found that negligence was not the proximate cause of minor's impairment. There were three indicators that classified this delivery as a traumatic one. First one, head trauma to the baby. Second, the mother, Anus, was torn. And third, minor plaintiff developed Earl's palsy and was diagnosed with dislocation of his right arm. All these factors showed that the delivery of minor plaintiff was not a normal vaginal delivery and that a shoulder dystocia occurred in this case. Counselor, I'm trying to understand your argument. I'm getting to that right now. Let me just ask a question. With regard to the hospital, the jury found that even though the hospital may have been negligent, that that negligence was not the proximate cause of the injury to the baby. Exactly. That's not inconsistent. It just meant that any negligence on the part of the defendant wasn't what contributed to the baby's injury. That's why we are going to discuss the two errors that were raised. But I don't see how that's an error. So you have to tell us why that's an error as opposed to just the finding that the negligence didn't contribute. Well, the jury in this case didn't have all the evidence available to get into the conclusion that the proximate cause of the baby's injury was due to the negligent act of the doctor and the hospital per se. Why? Because as we discussed on our second argument, we stated that there is enough evidence to have adopted the jury instruction number 16. Jury instruction number 16, it regards the direct negligence of the hospital, not the vicarious responsibility of the hospital. That jury instruction was not adopted in this case. So that's one of the issues. The other issue is regarding the direct examination of the hospital employee and the hospital agent, Sara Montalvo's nurse. Upon review of the record, it is clear that the court erred in depriving the plaintiff from leading the witness and direct examining the witness by leading questions. And that was in controversy with Rule 611C because nurse Sara Montalvo, as it was shown, was identified with both co-defendants. Sara Montalvo is a registered nurse that works for co-defendant Lodal Health since 1984. That's 30 years from now. She is paid by the hospital and that has been her only job as a nurse since graduating. Assuming the court, getting to your second point, assuming the court could have exercised this discretion to allow that witness to have been examined as a hostile witness or an adverse witness, there's nothing in your brief which indicates to us what you would have asked of this witness in a leading way that didn't come out through the direct examination of this witness in a non-leading manner. So we're at a complete loss as to figure out how you were prejudiced by not being allowed to ask leading questions. Yes, Your Honor. If we would have been allowed to lead the examination of the witness, we would have discovered that Sara Montalvo did not receive any special education in shoulder dystocia in cases like this one. Well, why couldn't you just ask her that? We tried, Your Honor. If you review the record, the record is full of objections. One after the other, there are more than 20 objections on the record. We were not even able to pinpoint all the duties of the nurse because every question was objected. And at one point, this witness just testified that she didn't recall. On her deposition, there was plenty of information that we needed to get into the trial. We were not able to do so, Your Honor. And if you check the record, the record clearly shows that we were constantly, constantly obstructed by counsels from defendants and the court always ruled, sustaining the objection of leading questions. May I proceed? That partially answers the question. But go ahead. So, if we would have been allowed to examine the witness by leading question, we would also have shown that one of her duties was to evaluate the baby's arms, which she clearly states so, but she failed to record on the medical notes, on her nurse's notes, that this baby had physical abnormalities. She failed to do so. She covered Dr. Joseph Caprefeu and we would have proven that she lied. And she testified that she never saw Dr. Caprefeu use vacuum extractor or forceps when, from the record, it's shown that he did use a vacuum extraction in this case. She did not put that on the record either. The thing is that by not letting plaintiff examine this witness, that it is clear from the rules and from the case law that this nurse was a witness identified with an adverse party and she was even a hospital officer as counsel for defendant arguing in front of the court. And if I can make reference to this case, Your Honor, citing the Rule 611C2 of the Rules of Evidence, which states in pertinent part that the court should allow leading questions when a party calls as a hostile witness an adverse party or a witness identified with an adverse party. And this is not because that party is a hostile witness in the technical sense, but because, however, cooperative, which the judge stated at one point, the witness has a built-in incentive to slide away from the questions or slam the answers. May I proceed? Excuse me, your time is up. That's citing, that's citing religious... Pardon me, hello?  I think your time is up. Thank you. Can I please give you the citation of the case? Yes. The case is Rodriguez v. Banco Central, 990 Federal Second 7, First Circuit, 1993. That's not in your brief? Your Honor, we will request that we amend the brief by a letter of 20 AG because it's not on the brief. That case is not on the brief. Go ahead.  Five days would be okay. Five days is fine. Notify your opposing party and they have five days to oppose that. We will. Thank you. Mr. Colon? Good morning, Your Honors. Good morning. I'm sorry. Yes, good morning. I was in another cloud. Okay. I tried to deal with... Okay. There's a statement in the Booker v. Washington State... Washington Department... I'm sorry. There's a statement in the case of Booker v. Massachusetts Department of Human Health, which we can discuss later in another context, that says that counsel has a duty to object even at the risk of incurring in displeasure of the trial court. What Appellants started the argument with is by stating that they felt uncomfortable because lawyers for the defense were objecting the line of questioning of the plaintiff, in this case Appellants, and that the court was granting the objections. In their argument, they don't say the merits of those objections. And they tried to present the court like if defendants were trying to place an obstacle in plaintiff's strategy. I can be the whole morning here, your honors, rebutting plaintiff's theory of the case on the merits. Even the nature of the condition of the minor in this case is an issue. They say that he had what they call shoulder dystocia. But the jury found the doctor negligent, right? Yes. So the case turns on vicarious liability against your client. Not exactly, because under Puerto Rico law, since this wasn't a salary doctor, the liability of the hospital was not automatically, so it was not vicarious. But it turns on whether or not there's vicarious liability under the facts of the case. Exactly. And so they asked for, their instruction number 16 was directed towards the hospital's duty with regard to who it allowed to practice in the hospital. Yes. What was wrong under Puerto Rico law with plaintiff's instruction number 16? I think that if we got to see it this way, instructions 19 and 20, which were the ones picked by the court, encompass what was included in instruction 16 proposed by plaintiff. But it doesn't, because 16 says that the hospital has a duty of careful selection of the doctors in which they grant the privilege of using their hospital facilities. Whereas 20 says, as a rule, the hospital should not be held liable for the negligence of an unsalaried physician. But there's the instruction 19, and it's reported out. The trial court is presently saying that rule 16 was a substitution of, I'm sorry, the court provided, the trial court provided that instruction 16 was an alternative to what the court considered to be better instructions 19 and 20. So you're saying 16 is actually an okay statement of Puerto Rico law, but 19 and 20 do it just in a different way. Exactly. And that is considering that that was the court's discretion and that there was no plain error here. And plaintiff has failed to establish that there was plain error and that the court abused of its discretion in providing so. And why would the plain error test apply when the plaintiff specifically asked for number 16 and the court did not give it? Because it's not exactly what happened according to record, Your Honor. Our position is that plaintiffs never properly objected the exclusion of instruction 16 and the exclusion of instructions 19 and 20 as provided by the court. I know that in the opinion and order of the court in rule 4, I'm sorry, footnote 4, the court provided that plaintiff did so. But if you see the transcript of the proceedings on October 31st, which was when the instructions were read to the jury, the only objection posed by plaintiffs to the instructions provided by the court, which happens to be objected by Mr. Luis Rivera, which is here present today, was whether it was included a boilerplate provision regarding causation. That was the only objection submitted by plaintiffs as to the inclusion or non-inclusion of instructions 16 or the inclusion or non-inclusion of instructions 19 and 20. Our understanding, Your Honor, is that under the Booker case and also under the case of Kersergas v. American and Wang, plaintiffs failed to properly object that line of reasoning of the court by not allowing instruction 16 and allowing instructions 19 and 20. On the other hand... Let me make sure I understand what you just said. Yes, sir. You're saying they asked the 16 that covers vicarious liability. The judge then gave 19 and 20... Yes. ...that also sort of cover vicarious responsibility. And then they never at that point said, Judge, your 19 and 20 doesn't cover everything in our 16. Exactly, Your Honor. And you can see when Mr. Rivera stated, you know, the only objection was as to whether there was a boilerplate instruction regarding causation, which I don't know if it was boilerplate or not, but there was an instruction. I think it was instruction 18, the one dealing with causation. So our understanding, Your Honor, is that plaintiffs failed not only to properly object, but they only failed to establish how come the court, the trial court, abused of its discretion in providing, as the court did, and how come this error, it's plain or it's, you know, it's a big error. Why wasn't the court abusing its discretion in refusing to allow leading questions of an obviously hostile witness? Because the court provided that it was not a hostile witness. Well, how could it not be? Because under Rule 611C, the court has the duty to make that determination by examining the demeanor of the witness. And that's something that I got to, first of all, let me answer the question. Wait a minute. I'm asking the question. Okay. And the question is, wasn't this an employee of the hospital? Yes. For how many years? Not for 30 years. For 24 years, Your Honor. All right. That's not equivalent. Now, doesn't that, in addition to the fact that she was involved in the operation or the delivery, I should say, on behalf of the hospital, make her a hostile witness? No, it doesn't. No? Okay. Because the court provided that she was cooperative, that she was responsive, and she never showed any hostility in her examination. That was a conclusion determined by the trial judge after she examined the demeanor of the witness in which plaintiff has failed to establish that the court was wrong. Our contention, Your Honor, is just because a person is an employee of an institution for many years, that doesn't turn the person into a hostile witness. And that's what the court understood. On the other hand, Your Honor. So you think hostility is a question of demeanor? I'm sorry? You think hostility is a question of demeanor only? Well, there's no other reason for which plaintiffs are trying to establish the so-called hostility here. And there's no other information in the record whatsoever as to why Ms. Sara Montalvo was a hostile witness. Well, plaintiffs argue that she was evasive and failing to recall things. That's not what the court concluded. And they haven't quoted one single piece of the transcript providing so. Not in the brief. I'm sorry? They haven't quoted anything in the brief. They haven't quoted any single piece of the transcript in the brief, exactly, providing so. And our contention is that that is not correct. This is a conclusive statement that has stated the same way that Counsel Ramos stated here that the witness lied. How can you tell whether she lied or not? That's a determination to the jury to determine. They haven't quoted one single piece on the record to sustain that conclusion. I'm sorry. You're talking about a witness whose employer's liability hinges potentially on the witness's testimony. Yes. And you're saying you can't cross-examine a witness like that when you're the opposing party with leading questions? I'm sorry, but I'm following you. Can you explain? Sure. If I'm deposing someone and they're the employee of the other party, then the case could hinge on what they say. I've got to do direct exam only. I can't cross them with leading questions? Well, there's 20 ways to skin a cat, Your Honor. They haven't established one single question, which they have said it was leading. Could the judge have said that you can't depose any of the plaintiff's witnesses because their demeanors all seemed very credible? I'm sorry. Your Honor. Thank you. Okay. Thank you, Your Honor. Very briefly, regarding the Instruction 16, our position is that it was preserved on the record, and it was also raised on the post-trial motion, Rule 59. When the judge gave the instructions, 19 and 20, did you ever say to the judge before the jury retired something to the effect that 19 and 20 didn't do it? There was stuff that the judge missed from your 16. Your Honor, we believe so. We couldn't locate that in the record right now, but if not, anyways, this is a matter of the standard of review. So if it's not going to be a standard of review of abuse of discretion, it is anyway a plain error standard of review, because this was manifest injustice in this case by not giving that specific instruction, because that instruction deals specifically with the duty of the hospital in monitoring their employees, or not employees, but the doctors with privilege on those facilities. And the record showed that plaintiff, in this case, presented to the testimony of co-defendant Caprefeu, that he was at least sued 10 times for medical malpractice while working on that hospital, and that the hospital did nothing to monitor his work or his credentials. So if the record doesn't show, which we believe it did show that we object on that instruction, and we also presented on the post-trial motion, then the review would be plain error, but it needs to be reviewed. Thank you. Thank you.